### BOARD OF DIRECTORS OF ST. FRANCIS LEVEE DISTRICT v. WEBB.

(Circuit Court of Appeals, Eighth Circuit.    April 24, 1911.)

No. 3,451.

EMINENT DOMAIN (§ 69*)—CONDEMNATION PROCEEDINGS—DAMAGES.

On an appeal from an award of damages made in proceedings to condemn land for levee purposes, the landowner was entitled to an award of damages in money, and the court properly refused to withdraw from the jury the question of damage from obstruction of drainage, on an offer by the district to cut drains through an old levee to obviate such damage.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 171–179; Dec. Dig. § 69.*]

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Proceedings by the Board of Directors of St. Francis Levee District against George T. Webb. From a judgment awarding damages to defendant, plaintiff brings error. Affirmed.

H. F. Roleson, for plaintiff in error.

Percy & Hughes, for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and RINER, District Judge.

HOOK, Circuit Judge. The board of directors of St. Francis levee district instituted in a state court of Arkansas proceedings to condemn a right of way for a levee over the lands of George T. Webb on the west bank of the Mississippi river. Appraisers were appointed as provided by local statute, and they subsequently filed their report and award of the value of land taken and the damages. The landowner filed exceptions to the report, and then removed the cause to the Circuit Court of the United States for the Eastern District of Arkansas, where it was tried to a jury. The trial court submitted to the jury special questions covering the various items of damage, and also the market values of the entire tract of land before and after the appropriation. The value of the land taken and the damages shown by the special verdict aggregated $5,000, and judgment was rendered in favor of the landowner for that sum. It appeared that $2,000 of the award was for obstruction to the natural drainage of that part of the land which was between the line of the new levee and an old levee nearer the river built some years before. The controversy here is over that item.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the close of the evidence the levee district filed in open court a written offer and agreement to cut the old levee next to the river, so as to make the drainage claimed to have been obstructed as effective as it was before the new levee was built, that the court might make appropriate orders directing and requiring the work to be done, and that if it was inadequate when completed the judgment in the present case should not bar a future action by the landowner for damages. It then asked the court to instruct the jury that no damage should be found for obstructed drainage, except the cost of artificial drainage; also that the offer and agreement referred to eliminated from consideration all question of damage by such obstruction. The instructions were refused. The court also withdrew from the questions to be answered by the jury one as to whether the land between the levees could be drained artificially and made as good as before, and, if so, at what cost.

We think the trial court was right, regardless of an Arkansas statute relating to damages which the landowner claims is contrary to the state Constitution. This being so, the validity of the statute need not be determined. The controversy at the trial was whether the natural flow of the surface waters was obstructed and the land thereby damaged, not whether artificial means of drainage were practicable; and there was no evidence whatever as to the cost of such means even if they were practicable. Again, there was evidence that formerly the surface waters naturally ran off the land westward towards the new levee, and it was not claimed at the trial that that levee could safely be opened to permit their escape. The offer of the levee district was properly disregarded. It does not appear that the plan according to which the condemnation proceeded and the levee was built specified as part thereof permanent means of draining the land. The condemnation was not qualified or limited in that way. When the case was tried the landowner was entitled to an assessment of his damages in money, not in obligations or promises possibly productive of future litigation. Of course, when the matter is under the control of the owner of the property, the cost of adjusting it to changed conditions, or of alleviating or preventing the damage, is proper evidence; but that was not the case here, as the levee was a public structure, and, besides, as already noted, there was no evidence of such cost.

The judgment is affirmed.